**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TERRY R. MAYNARD, | No. CIV S-08-2496-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

    Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 19) and defendant's cross-motion for summary judgment (Doc. 23).

/ / /

/ / /

/ / /

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits in November 2005.  In the application, plaintiff claims that disability began on June 1, 2001.  Plaintiff claims that disability is caused by a combination of: (1) subacromial bursitis with frozen shoulder component; (2) back and shoulder pain with arthritic changes in the thoracic, lumbar, and shoulder areas; and (3) carpel tunnel syndrome.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on August 28, 2007, before Administrative Law Judge ("ALJ") Plauche F. Villere, Jr.  In a September 17, 2007, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairments: bilateral carpel tunnel syndrome, left shoulder pain, and low back pain;

2. The claimant does not have an impairment or combination of impairments which meets or medically equals an impairment listed in the regulations;

3. The claimant has the residual functional capacity to perform the full range of light work; and

4. Considering the claimant's age, education, work experience, and residual functional capacity, the regulations direct a finding of not disabled.

After the Appeals Council declined review on August 21, 2008, this appeal followed.

# II.  SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following evidence, summarized chronologically below:

October 17, 2005 – X-rays of plaintiff's lumbosacral spine revealed mild chronic changes with no acute process.

January 28, 2006 – Agency examining doctor Steve McIntire, M.D., performed a comprehensive neurological examination.  Dr. McIntire reported the following history:

> The claimant described a work injury in approximately 1980.  He was working as a cabinetmaker at the time.  He developed significant lumbar pains.  He underwent a work-up, including radiographic studies, at the

2

> time. I do not have that radiographic report. I have a more recent radiographic study done in October 2005 that revealed mild chronic changes at the lumbar level. There were mild multi-level degenerative changes noted. The claimant denied a history of surgery of the spine. He underwent physical therapy and got somewhat better with time. He currently describes lumbar pains that come and go. The pains occur over the right or left buttock and can extend into the proximal thigh on the right or left side. He did not describe clear radicular symptoms. His pains come on currently when he does too much work.
>
> The claimant also described a history of carpal tunnel syndrome. He indicated that the symptoms in his hand began approximately 10 years ago. He has not had surgery for the carpal tunnel syndrome. He has apparently had an EMG/nerve conduction study, but I do not have this result to review. He was provided wrist splints for a time, but is not currently using them. He indicated that at present he notes occasional numbness of the hands, which occurs diffusely. It involves all digits of the hands when it occurs. It comes and goes. Occasionally it occurs at night.

Plaintiff did not report taking any medications for his various problems. Following his examination, Dr. McIntire provided the following functional assessment:

> Subjectively, the claimant presents with complaints of lumbar discomfort and carpal tunnel syndrome.
>
> Objectively, there is slight flattening of the normal lumbar curvature and loss of range of motion of the lumbar spine. There are not, however, findings of a lumbar radiculopathy or a myelopathy. He may have mild carpal tunnel syndrome, but there are not findings on examination to suggest significant carpal tunnel syndrome. There are not medial nerve distribution findings.
>
> Given the lumbar findings and loss of range of motion, the claimant would have functional limitations. He would be limited in terms of heavy lifting or carrying activities to not more than 20 pounds frequently or 40 pounds occasionally. The current examination itself does not point to additional specific functional limitations. There are not limitations suggested in terms of time sitting, standing, or walking. There are not postural, manipulative, environmental, communicative, or cognitive limitations suggested by the present examination.

> <u>March 1, 2006</u> – Agency consultative doctor P.A. Bianchi, M.D., prepared a

physical residual functional capacity assessment. Dr. Bianchi opined that plaintiff could occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds. Plaintiff was limited to standing/walking/sitting for no more than six hours in a work day. Plaintiff was not limited in

his ability to push/pull.  No postural, manipulative, visual communicative, or environmental limitations were noted.

March 28, 2006 – Minor abnormalities were noted on x-rays of plaintiff's left shoulder.

March 30, 2006 – Treatment notes indicate that plaintiff reported severe left shoulder pain.  The doctor observed severe guarding and an inability to perform impingement maneuvers or cross-body adduction.  The doctor assessed subacromial bursitis with frozen shoulder component and recommended an arthrogram for further diagnostic verification.

April 13, 2006 – An arthrogram of the left shoulder revealed normal results.

April 20, 2006 – Plaintiff again reported to his treating doctor that he was experiencing severe shoulder pain.  Plaintiff reported that his shoulder "feels frozen."  The doctor recommended additional diagnostic follow-up after obtaining bone scan results.

May 23, 2006 – A whole-body bone scan was performed which revealed largely normal results.  At worst, only mild abnormalities were noted.

May 25, 2006 – Plaintiff's mother – Rusty Joyce Kelly – submitted a third-party statement.  Ms. Kelly stated that plaintiff has lived with her since childhood.  She stated that, while he can care for his own hygiene and eating, plaintiff "is limited to watching T.V. as his back severely limits his movements."  She stated that plaintiff is unable to do housework or chores.  Ms. Kelly added that plaintiff's pain causes his difficulty with lifting, squatting, bending, standing, walking, sitting, kneeling, climbing stairs, using his hands, and completing tasks.  However, Ms. Kelly stated "don't know" when asked how long plaintiff could walk at a time before needing to rest.

June 6, 2006 – Agency consultative doctor A.G. Dipsia, M.D., also submitted a physical residual functional capacity assessment.  Dr. Dipsia concluded that plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds.  The doctor opined that plaintiff was limited to no more than six hours sitting/standing/walking.  Plaintiff's ability to

4

push/pull was unlimited.  No postural limitations were noted other than in inability to balance.  Plaintiff was assessed as limited to only occasional overhead reaching with the left upper extremity, but no other manipulative limitations were noted.  No visual or environmental limitations were noted.

July 18, 2006 – Treating source progress notes reflect that plaintiff underwent acupuncture for his shoulder pain.  On examination, the doctor noted that plaintiff's shoulder range of motion was increased from 45 degrees to 70 degrees with no pain.  The doctor appears to question whether a diagnosis of subacromial impingement syndrome from bursitis is warranted.  Conservative treatment consisting of continued home exercises was prescribed.

September 11, 2006 – Physical therapy notes reveal that plaintiff reported an increased range of shoulder motion since beginning home therapy exercises.  Pain remained at 5 out of 10.  Plaintiff was instructed on new home exercises.

October 26, 2006 – Plaintiff reported to his physical therapist that his pain had decreased since commencement of use of a TENS unit two week earlier.

October 31, 2006 – Physical therapy notes reflect that plaintiff reported that his level of pain was 1-2 out of 10 and remained unchanged since last visit five days prior.  While plaintiff reported pain following his last session, he told the therapist that the pain was "very minimal" and lasted only a short time.  The therapist reported that "there has been an increase of at least 4 degrees of [range of motion]. . ." since the last session.  Further conservative treatment was prescribed.

January 12, 2007 – Physical therapy treatment notes reflect that plaintiff failed to attend sessions scheduled for November 9, 2006, and November 16, 2006.  No significant changes since plaintiff's last visit on October 31, 2006, were noted.

January 25, 2007 – Physical therapy notes reveal increased range of motion in the shoulder.  Further therapy was prescribed and plaintiff was instructed to return in three weeks for follow-up.

### III.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## IV.  DISCUSSION

In his motion for summary judgment, plaintiff argues:

> The ALJ committed two principal errors in reaching his flawed determination of "not disabled."  First, the ALJ failed to properly evaluate and credit Mr. Maynard's testimony and third party statements regarding his pain and functional limitations.  Second, the ALJ failed to show that Mr. Maynard could perform substantial gainful work at step five by failing to properly assess his RFC and by utilizing the GRIDS despite the presence of nonexertional limitations and without the expertise of a vocational expert.

Plaintiff's first argument challenges the ALJ finding that plaintiff's testimony was not credible as well as the ALJ's evaluation of lay witness statements.  Plaintiff second argument in essence challenges the ALJ's residual functional capacity determination that plaintiff has no non-exertional limitations.  According to plaintiff, his disability is caused mainly by non-exertional limitations, including pain, postural limitations, and manipulative limitations.  Plaintiff further contends as part of his second argument that the ALJ erred in applying the Grids in lieu of vocational expert testimony because plaintiff has non-exertional limitations.  Plaintiff's two arguments are linked in that plaintiff asserts that, had the ALJ properly credited and discussed his own statements as well as those from third parties, the ALJ would have concluded that plaintiff in fact has non-exertional limitations.

### A.  **Plaintiff's Credibility**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

As to plaintiff's credibility, the ALJ stated:

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.

At the hearing, the claimant testified that he can do his own grooming and dress himself. He can cook and shop. He can drive, but cannot sit long periods of time. He drives to the V.A. Clinic which is 20 minutes each way. He stated he last worked in 2001; he woke up one morning and could not physically get out of bed. He has lumbar pain, going down [the] sciatic nerve. His pain level depends on the physical activity. His treatment consisted of TENS Unit, acupuncture, and physical therapy, which none of it helped. He stated he has bilateral carpal tunnel. His hands fall asleep at night, and holding objects is a problem [because] he drops thing[s]. The claimant states he takes Morphine for pain two to three times a month, sometimes more often.

While the claimant has had numerous physical complaints and sees his physician on a regular basis, the minimal clinical findings do not justify the claimant's contention that they keep him from working. While he has received treatment for the allegedly disabling impairment, the treatments have been essentially routine and conservative in nature. The treatment he has received for all of his impairments have been office visits for routine complaints and check-ups. There are no emergency room treatments, no surgeries, or hospitalizations.

The claimant was referred to . . . acupuncture treatment. The claimant's treatment also consisted of physical therapy. The claimant's physician treats him for various complaints of shoulder pain and back pain. An x-ray of the lumbar spine showed multilevel degenerative changes but no disk protrusion or bulges and an x-ray of the left shoulder showed minor abnormality. The claimant was able to walk on heels and toes and tandem walk. He had a normal gait. Findings of the lumbar spine have revealed slight flattening of the lumbar spine and some limitations in range of motion. He also had some limitation in left upper extremity. However, straight leg raise was negative, no paraspinal muscle spasm or tenderness on palpation was noted, muscle bulk and tone were normal, and motor strength was 5/5 proximally and distally throughout the upper and lower extremities. His hand examination showed no weakness or sensory loss. Fine finger movements were rapid and symmetric. Sensory exam, deep tendon reflexes were within normal limits. No nerve conduction test was provided. There was no evidence of atrophy, weakness, deformity, muscle tenderness or spasms, anatomically consistent sensation changes, or reflex changes. Also, his neurological exam was nonfocal. The claimant was taking over-the-counter medications but as his back felt better he stopped taking [them]. In January 2006 the claimant was not taking any medications. The claimant currently takes ibuprofen.

> Although, at the hearing the claimant testified that he takes Morphine two to three times a month. The medical evidence does not show that the claimant was ever prescribed Morphine. In a report dated as recent as April 2007, the claimant was taking Cephalexin for finger infection, Hydrochlorothiazide for blood pressure, Gabapentin at bedtime, and Simvastatin for cholesterol. There is no indication that the claimant's physician prescribed any strong narcotic medication.
>
> * * *
>
> The claimant reported he is also able to pick up and lift objects that aren't too heavy. He had increased range of motion of the left shoulder. The therapist instructed the claimant in weight-bearing exercises of lateral and regular push-ups of shoulder while seated and from the floor. He was also provided with more resistive therabands or medium grade to replace the light resistive bands to do home exercises.

Plaintiff argues that the ALJ erred because he failed to provide clear and convincing reasons for rejecting his testimony as not entirely credible. The court does not agree. The ALJ cited the following reasons for rejecting plaintiff's testimony as to intensity and effect of his pain symptoms: (1) symptoms out of proportion to objective medical findings; and (2) lack of treatment consistent with disabling pain. The court finds that these reasons are clear and convincing in light of the record as a whole.

As the ALJ noted, plaintiff testified as to completely disabling pain, yet such symptoms are completely inconsistent with the minimal clinical findings. October 2005 x-rays of plaintiff's back revealed only mild changes with no acute processes. In January 2006, Dr. McIntire reported on minimal objective findings noted on examination of the plaintiff and concluded that plaintiff could perform at least light work. In March 2006, Dr. Bianchi agreed with Dr. McIntire's functional assessment. A March 2006 x-ray of plaintiff's left shoulder revealed only minor abnormalities. A May 2006 whole-body scan revealed, at worst, mild abnormalities. Records of plaintiff's physical therapy treatment reflect that, over several months of treatment, plaintiff's condition improved.

/ / /

/ / /

The court also agrees with the ALJ that the treatment plaintiff sought is inconsistent with the level of pain to which he testified. Specifically, while plaintiff states that his pain is totally disabling, he never sought aggressive pain management treatment. Instead, his treatment has been conservative. He never sought surgery, nor was surgery recommended. While he states he takes Morphine for pain, the record does not reflect that any narcotic pain medication has ever been recommended or prescribed. And, as revealed by physical therapy records, plaintiff failed to appear for many sessions and, when he did, he reported progress with conservative measures and use of a TENS unit.

### B.    Lay Witness Statements

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

The ALJ, however, need not discuss all evidence presented. See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, he must explain why "significant probative evidence has been rejected." Id. (citing Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981). Applying this standard, the court held that the ALJ properly ignored evidence which was neither significant nor probative. See id. at 1395. As to a letter from a treating psychiatrist, the court reasoned that, because the ALJ must explain why he rejected uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was controverted by other medical evidence considered in the decision. See id. As to lay witness testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court

concluded that the evidence was properly ignored because it "conflicted with the available medical evidence" assessing the plaintiff's mental capacity.  Id.

In Stout v. Commissioner, the Ninth Circuit recently considered an ALJ's silent disregard of lay witness testimony.  See 454 F.3d 1050, 1053-54 (9th Cir. 2006).  The lay witness had testified about the plaintiff's "inability to deal with the demands of work" due to alleged back pain and mental impairments.  Id.  The witnesses, who were former co-workers testified about the plaintiff's frustration with simple tasks and uncommon need for supervision.  See id.  Noting that the lay witness testimony in question was "consistent with medical evidence," the court in Stout concluded that the "ALJ was required to consider and comment upon the uncontradicted lay testimony, as it concerned how Stout's impairments impact his ability to work."  Id. at 1053.  The Commissioner conceded that the ALJ's silent disregard of the lay testimony contravened Ninth Circuit case law and the controlling regulations, and the Ninth Circuit rejected the Commissioner's request that the error be disregarded as harmless.  See id. at 1054-55.  The court concluded:

> Because the ALJ failed to provide any reasons for rejecting competent lay testimony, and because we conclude that error was not harmless, substantial evidence does not support the Commissioner's decision . . .

Id. at 1056-67.

From this case law, the court concludes that the rule for lay witness testimony depends on whether the testimony in question is controverted or consistent with the medical evidence.  If it is controverted, then the ALJ does not err by ignoring it.  See Vincent, 739 F.2d at 1395.  If lay witness testimony is consistent with the medical evidence, then the ALJ must consider and comment upon it.  See Stout, 454 F.3d at 1053.  However, the Commissioner's regulations require the ALJ consider lay witness testimony in certain types of cases.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); SSR 88-13.  That ruling requires the ALJ to consider third-party lay witness evidence where the plaintiff alleges pain or other symptoms that are not shown by the medical evidence.  See id.  Thus, in cases where the plaintiff alleges

1  impairments, such as chronic fatigue or pain (which by their very nature do not always produce
2  clinical medical evidence), it is impossible for the court to conclude that lay witness evidence
3  concerning the plaintiff's abilities is necessarily controverted such that it may be properly
4  ignored.  Therefore, in these types of cases, the ALJ is required by the regulations and case law to
5  consider lay witness evidence.

6         Plaintiff argues that the ALJ erred by ignoring a third-party statement submitted
7  by his mother.  The court does not agree.  At the outset, the court notes that the evidence does not
8  indicate that plaintiff suffers from the kind of chronic condition which would require
9  consideration of Ms. Kelly's statement.  Instead, plaintiff alleges that his pain is the result of non-
10 chronic conditions such as bursitis in the shoulder and carpel tunnel syndrome.  As with
11 plaintiff's own statements of disabling pain, Ms. Kelly's similar statements are controverted by
12 the objective medical evidence.  Therefore, the ALJ did not err by failing to address Ms. Kelly's
13 statement.

### C. **Application of the Grids**

15        The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about
16 disability for various combinations of age, education, previous work experience, and residual
17 functional capacity.  The Grids allow the Commissioner to streamline the administrative process
18 and encourage uniform treatment of claims based on the number of jobs in the national economy
19 for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458,
20 460-62 (1983) (discussing creation and purpose of the Grids).

21        The Commissioner may apply the Grids in lieu of taking the testimony of a
22 vocational expert only when the Grids accurately and completely describe the claimant's abilities
23 and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v.
24 Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the
25 Grids if a claimant suffers from non-exertional limitations because the Grids are based on
26 ///

exertional strength factors only.[1] See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

///

---

[1] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

1  At the last step of the sequential analysis, the ALJ applied the Grids to determine
2  that plaintiff is not disabled: "Based on a residual functional capacity for the full range of light
3  work, considering the claimant's age, education, and work experience, a findings of 'not
4  disabled' is directed by Medical-Vocational Rule 202.21." Plaintiff argues that, while the ALJ
5  accepted the agency doctor's opinion as to plaintiff's functional capabilities, the ALJ's
6  application of the Grids ignored the doctor's opinion that plaintiff has the non-exertional
7  limitation to only occasional overhead lifting. He also argues that "chronic pain, postural
8  limitations, manipulative and reaching limitations, as well as sit/stand/walk limitations" render
9  the Grids inapplicable.

10  The ALJ in this case concluded that plaintiff has the functional capacity for the
11  full range of light work. This conclusion is supported by the opinions of the agency doctors and
12  is consistent with the record of conservative treatment. The only issue is whether the ALJ erred
13  by applying the Grids notwithstanding Dr. Dipsia's June 2006 opinion that plaintiff was limited
14  to only occasional overhead reaching with the left upper extremity. The court finds that there
15  was no error. As defendant notes, a finding of a limitation to a subset of reaching activities as
16  affects the non-dominant arm does not in this case significantly affect plaintiff's exertional
17  capabilities. While Dr. Dipsia expressed a limitation to only occasional overhead reaching with
18  the left upper extremity, the doctor concluded that plaintiff could nonetheless perform strength
19  activities consistent with the full range of light work. This conclusion was shared by the other
20  agency doctors.
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /

## V.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 19) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 23) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 30, 2010

*/s/ Craig M. Kellison*
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE